Chief Judge KOZINSKI,
with whom Judges KLEINFELD, W. FLETCHER, PAEZ and M. SMITH join, concurring:
The opinion correctly disposes of the Fourth Amendment issues in this case, so I join it in full. I write separately because these issues are important and likely often to arise again. It would therefore be useful to provide guidance about how to deal with searches of electronically stored data in the future so that the public, the government and the courts of our circuit can be confident such searches and seizures are conducted lawfully. The guidance below offers the government a safe harbor, while protecting the people’s right to privacy and property in their papers and effects. District and magistrate judges must exercise their independent judgment in every case, but heeding this guidance will significantly increase the likelihood that the searches and seizures of electronic storage that they authorize will be deemed reasonable and lawful.
* * *
When the government wishes to obtain a warrant to examine a computer hard drive or electronic storage medium to search for certain incriminating files, or when a search for evidence could result in the seizure of a computer, see, e.g., United States v. Giberson, 527 F.3d 882 (9th Cir. 2008), magistrate judges should insist that the government forswear reliance on the plain view doctrine. They should also require the government to forswear reliance on any similar doctrine that would allow retention of data obtained only because the government was required to segregate seizable from non-seizable data. This will ensure that future searches of electronic records do not “make a mockery of Tamura ” — indeed, the Fourth Amendment — by turning all warrants for digital data into general warrants. Maj. op. at 1170-71. If the government doesn’t consent to such a waiver, the magistrate judge should order that the seizable and non-seizable data be separated by an independent third party under the supervision of the court, or deny the warrant altogether.
In addition, while it’s perfectly appropriate for a warrant application to acquaint the issuing judicial officer with the theoretical risks of concealment and destruction of evidence, the government should also fairly disclose the actual degree of such risks in the case presented to the judicial officer. In this case, for example, the warrant application presented to Judge Johnson discussed the numerous theoretical risks that the data might be destroyed, but failed to mention that Comprehensive Drug Testing had agreed to keep the data intact until its motion to quash the subpoena could be ruled on by the Northern California district court, and that the United States Attorney’s Office had accepted this representation. This omission created the false impression that, unless the data were seized at once, it would be lost. Comprehensive Drug Testing, 513 F.3d at 1132 (Thomas, J., dissenting). Such pledges of data retention are obviously highly relevant in determining whether a warrant is needed at all and, if so, what its scope should be. If the government believes such pledges to be unreliable, it may say so and explain why. But omitting such highly relevant information altogether is inconsistent with the government’s duty of candor in presenting a warrant application. A lack of candor in this or any other aspect of the warrant application must bear heavily against the government in the calculus of any subsequent motion to return or suppress the seized data.
*1179 The process of sorting, segregating, decoding and otherwise separating seizable data (as defined by the warrant) from all other data should also be designed to achieve that purpose and that purpose only. Thus, if the government is allowed to seize information pertaining to ten names, the search protocol should be designed to discover data pertaining to those names only, not to others, and not those pertaining to other illegality. For example, the government has sophisticated hashing tools at its disposal that allow the identification of well-known illegal files (such as child pornography) without actually opening the files themselves. These and similar search tools should not be used without specific authorization in the warrant, and such permission should only be given if there is probable cause to believe that such files can be found on the electronic medium to be seized.
To that end, the warrant application should normally include, or the issuing judicial officer should insert, a protocol for preventing agents involved in the investigation from examining or retaining any data other than that for which probable cause is shown. The procedure might involve, as in this case, a requirement that the segregation be done by specially trained computer personnel who are not involved in the investigation. In that case, it should be made clear that only those personnel may examine and segregate the data. The government should also agree that such computer personnel will not communicate any information they learn during the segregation process absent further approval of the court.
At the discretion of the issuing judicial officer, and depending on the nature and sensitivity of the privacy interests involved, the computer personnel in question may be government employees or independent third parties not affiliated with the government. In a case such as this one, where the party subject to the warrant is not suspected of any crime, and where the privacy interests of numerous other parties who are not under suspicion of criminal wrongdoing are implicated by the search, the presumption should be that the segregation of the data will be conducted by an independent third party selected by the court. That third party should be prohibited from communicating any information learned during the search other than that covered by the warrant.
Once the data has been segregated (and, if necessary, redacted), the government agents involved in the investigation should be allowed to examine only the information covered by the terms of the warrant. Absent further judicial authorization, any remaining copies should be destroyed or, at least so long as they may be lawfully possessed by the party from whom they were seized, returned along with the actual physical medium that may have been seized (such as a hard drive or computer). The government should not retain copies of such returned data unless it obtains specific judicial authorization to do so.
Also, within a time specified in the warrant, which should be as soon as practicable, the government should provide the issuing officer with a return disclosing precisely what it has obtained as a consequence of the search, and what it has returned to the party from whom it was seized. The return should include a sworn certificate that the government has destroyed or returned all copies of data that it’s not entitled to keep. If the government believes it’s entitled to retain data as to which no probable cause was shown in the original warrant, it may seek a new warrant or justify the warrantless seizure by some means other than plain view.
This guidance can be summed up as follows:
*1180 1. Magistrate judges should insist that the government waive reliance upon the plain view doctrine in digital evidence cases. Pp. 1177-78 supra; see maj. op. at 1170-71.
2. Segregation and redaction of electronic data must be done either by specialized personnel or an independent third party. Pp. 1178-79 supra; see maj. op. at 1168-70, 1170-72. If the segregation is to be done by government computer personnel, the government must agree in the warrant application that the computer personnel will not disclose to the investigators any information other than that which is the target of the warrant.
3. Warrants and subpoenas must disclose the actual risks of destruction of information as well as prior efforts to seize that information in other judicial fora. Pp. 1178-79 supra; see maj. op. at 1167-68,1175-76.
4. The government’s search protocol must be designed to uncover only the information for which it has probable cause, and only that information may be examined by the case agents. Pp. 1178-79 supra; see maj. op. at 1170-72.
5. The government must destroy or, if the recipient may lawfully possess it, return non-responsive data, keeping the issuing magistrate informed about when it has done so and what it has kept. P. 1179 supra; see maj. op. at 1172-74.
This guidance is hardly revolutionary. It’s essentially Tamura’s solution to the problem of necessary over-seizing of evidence. Just as Tamura has served as a guidepost for decades, the procedures outlined above should prove a useful tool for the future. Nothing any appellate court could say, however, would substitute for the sound judgment that magistrate judges must, and I am confident will, exercise in striking this delicate balance.