**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

DAVID MCELMURRY,
*Defendant-Appellant*.

No. 12-50183

D.C. No.
3:10-cr-05096-JAH-1

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
October 7, 2013—Pasadena, California

Filed January 26, 2015

Before: Stephen Reinhardt, Andrew J. Kleinfeld,
and Morgan Christen, Circuit Judges.

Opinion by Judge Kleinfeld;
Partial Concurrence and Partial Dissent by Judge Christen

## SUMMARY[*]

### Criminal Law

The panel vacated a criminal judgment and remanded in a case in which the defendant was convicted of possessing child pornography, and distributing it through an online peer-to-peer file-sharing network.

The panel rejected the defendant's contention that convicting him of possessing and distributing the same images amounted to double jeopardy. The panel explained that neither possession nor distribution of child pornography is necessarily a lesser-included offense of the other.

The panel held that, as the defendant concedes, conduct such as his constitutes distribution under *United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012), which held that maintaining child pornography in a shared folder, knowing that doing so will enable others to download it, if another person does download it, amounts to sufficient evidence to sustain a conviction for distribution.

The panel rejected the government's contention that the defendant waived his Fed. R. Evid. 403 objection to the district court's admission pursuant to Fed. R. Evid. 404(b) of interview statements he made in connection with a prior state law child-pornography conviction, and in a letter written to an inmate a few months before the present crime was charged. The panel explained that a trial objection to what the court

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

had already definitively ruled unobjectionable, on the defendant's in limine motion, would have amounted to taking exception to an evidentiary ruling already made, which Fed. R. Evid. 103 says is unnecessary.

The panel explained that because remand is necessary under Rule 403, it did not need to decide whether the government correctly invoked Rule 404(b). The panel held that *United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007) (en banc), requires reversal in this case under Rule 403 because the record, briefs and oral argument establish that the district court admitted the statements and the letter without reading or listening to the material. The panel wrote that the government has not claimed that the error was harmless, much less borne its burden of proof of harmlessness.

Judge Christen concurred in part and dissented in part. She concurred in the portions of the majority opinion regarding double jeopardy and sufficiency of evidence to support the distribution conviction, as well as the majority's conclusion that the district court erred by making a Rule 403 determination with respect to the interview statements without reviewing them. She dissented from the majority's conclusion that the district court made a similar error with respect to the letter. She wrote that because the district court's pretrial ruling did not definitively address the specific letter exhibit that the government ultimately sought to introduce and because the defendant did not object at trial under Rule 403, she would review for plain error the district court's determination that the probative value of the letter outweighed its prejudicial effect, and would affirm the district court's ruling.

**COUNSEL**

John Balazs, Sacramento, California, for Defendant-Appellant.

Alessandra P. Serano, Assistant United States Attorney, San Diego, California, for Plaintiff-Appellee.

**OPINION**

KLEINFELD, Senior Circuit Judge:

We address double jeopardy and evidentiary issues in a child pornography case.

**Facts**

FBI agents used the identity of a member of an online file-sharing group, "GigaTribe," to find possessors and sharers of child pornography. They downloaded a large number of such images and videos from a GigaTribe user who called himself "Teentrade." They tracked the IP address of Teentrade to a house where McElmurry's mother and grandmother lived and which McElmurry frequented. After getting a search warrant, they waited until they saw that Teentrade was online, and knocked on the door. They pretended there was a package McElmurry had to sign for, to draw him away from the computers in hopes that he would not have time to delete or encrypt the data. Once McElmurry got to the door, the agents executed the search warrant.

The FBI agents located and seized three computers, two of which were running, but could not get into the computers

because they did not have the passwords. The agents were still able to connect to Teentrade online from their own devices. To figure out which computer, if any, was associated with Teentrade, they disconnected one computer at a time. When the agents unplugged the desktop computer, the downloads from Teentrade immediately stopped. After forensic analysis, the FBI agents still could not access data on the desktop because it was entirely encrypted. But based on what appeared to be McElmurry's soft drink by the desktop computer, the extensive downloads from Teentrade, the online presence of Teentrade at the moment before they knocked, and the name "Super Dave" on the desktop screen saver (McElmurry's first name is David), they inferred that Teentrade was McElmurry and that the desktop computer had child pornography on it.

McElmurry was charged in two counts, one for possessing child pornography,[1] one for distributing it.[2]

---

[1] 18 U.S.C. § 2252(a)(4)(B), applies to any person who, "knowingly *possesses* 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct." (emphasis added).

[2] 18 U.S.C. § 2252(a)(2), applies to any person who "knowingly receives, or *distributes*, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if—(A) the producing of such visual depiction involves the use of

Having been convicted in a jury trial, he appeals on the grounds discussed below. We have jurisdiction over this direct appeal under 28 U.S.C. § 1291.

## Analysis

### I. Double Jeopardy

McElmurry argues that convicting him of two crimes, possessing child pornography and also distributing it, amounts to double jeopardy. His theory is that both counts involved the same images, and that possession is a lesser-included offense of distribution.

Since the double jeopardy issue was not raised in district court, we review for plain error,[3] but the standard of review does not in this case affect the analysis. We have controlling precedents in which we have concluded that convictions for both receiving and possessing such images did indeed violate the Double Jeopardy Clause, despite applicability of the plain error standard, so the standard does not save the convictions.[4] And because double jeopardy would require at least one

---

a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct." (emphasis added).

[3] *See United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008) ("Although we normally review de novo claims of double jeopardy violations, we review issues, such as the present one, not properly raised before the district court for plain error.") (internal citation omitted).

[4] *See United States v. Schales*, 546 F.3d 965, 977–81 (9th Cir. 2008); *United States v. Giberson*, 527 F.3d 882, 891 (9th Cir. 2008); *Davenport*, 519 F.3d at 943–48.

conviction to be vacated on remand, without the possibility of retrial,[5] we address this issue first.

McElmurry relies on three decisions[6] in which we have held that separate convictions and sentencing for receiving and possessing do indeed violate the Double Jeopardy Clause where the convictions are predicated on the same images. The theory of all these cases is that under the *Blockburger v. United States* "same elements" test,[7] receiving necessarily includes possessing. As we stated in *Davenport*, "[i]t is impossible to 'receive' something without, at least at the very instant of 'receipt,' also 'possessing' it."[8] We therefore have concluded that possessing is a lesser-included offense of receiving child pornography.

This case is distinguishable because McElmurry's convictions are for possessing and distributing, not possessing and receiving. The question this case raises is whether the distinction makes a difference. We conclude that it does.

The *Blockburger* test, "where the same act or transaction constitutes a violation of two distinct statutory provisions, . . .

---

[5] *See Schales*, 546 F.3d at 980 ("[T]he only remedy consistent with the congressional intent is for the [d]istrict [c]ourt, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions.") (quoting *Ball v. United States*, 470 U.S. 856, 864 (1985)) (alteration in original).

[6] *See Schales*, 546 F.3d at 977–81; *Giberson*, 527 F.3d at 891; *Davenport*, 519 F.3d at 943–48.

[7] *See Blockburger v. United States*, 284 U.S. 299, 304 (1932).

[8] *Davenport*, 519 F.3d at 943.

is whether each provision requires proof of a fact which the other does not."[9]    Where the charges are receiving and possessing, the statutes do not each require such proof, because receiving means taking into one's possession, and therefore implies possession at least at the moment of receipt.[10]  Not so for distribution.  Suppose Tom, Dick and Harry are involved.  Tom asks Dick for a prohibited image.  Dick says, "I don't have it, but Harry does, and I'll ask him to send it to you."  Dick does not possess,[11] but nevertheless distributes, because he brought about Harry's distribution.  One statute says "knowingly possesses,"[12] the other says "knowingly . . . distributes,"[13] and either crime can be accomplished without the other.  Each crime requires proof of a fact that the other does not, possession for one and distribution for the other.  A possessor of prohibited images

---

[9] *Blockburger*, 284 U.S. at 304.

[10] *See Davenport*, 519 F.3d at 943.  *See also United States v. Romm*, 455 F.3d 990, 1001 (9th Cir. 2006) ("Generally, federal statutes criminalizing the receipt of contraband require a 'knowing acceptance or taking of possession' of the prohibited item."); *United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999) (defining "receive" as "[t]o take into one's hand, or into one's possession") (alteration in original).

[11] *See Romm*, 455 F.3d at 999 (defining "possession" as used in 18 U.S.C. § 2252A, a statute materially identical to the one at issue here, as "[t]he fact of having or holding property in one's power; the exercise of dominion over property") (alteration in original) (quoting BLACK'S LAW DICTIONARY 1183 (7th ed. 1999)).

[12] 18 U.S.C. § 2252(a)(4)(B).

[13] 18 U.S.C. § 2252(a)(2).

may choose not to share,[14] and a distributor, as in the Tom, Dick and Harry hypothetical, need not himself possess them.[15]  For another sort of contraband, narcotics, we held in *Mincoff* that possession is not an element of distribution,[16] and the same principle applies to the type of contraband at issue here.  One need not even have constructive possession to be a distributor.  Dick, in the hypothetical, does not need "dominion and control"[17] over Harry's image to arrange for Harry's distribution to Tom.   Neither possession nor distribution of child pornography is necessarily a lesser-included offense of the other.  Two of our sister circuits have reached the same conclusion,[18] and none, to our knowledge, disagree.

---

[14] *See Romm*, 455 F.3d at 999.

[15] Our precedents establish that "distribution" is defined broadly to encompass "participation in the transaction viewed as a whole."  *United States v. Ahumada-Avalos*, 875 F.2d 681, 683 (9th Cir. 1989) (holding defendant participated in distribution of cocaine because he "arranged for delivery of the drugs, made phone calls negotiating the price, amount, place of delivery, and payment, and traveled in furtherance of the crime").

[16] *See United States v. Mincoff*, 574 F.3d 1186, 1198 (9th Cir. 2009) ("We adopt the rule articulated by our sister circuits that a narcotics distribution charge may be established without proof of possession.").

[17] *See United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990) ("To prove constructive possession, the government must prove a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised dominion and control over the substance.") (internal quotation marks omitted).

[18] *See United States v. Chiaradio*, 684 F.3d 265, 280 (1st Cir. 2012) (holding that possession of child pornography is not a lesser-included offense of distribution of the same); *United States v. Woerner*, 709 F.3d 527, 539 (5th Cir. 2013) (following *Chiaradio*).

## II. Sufficiency of Evidence

McElmurry moved for a judgment of acquittal because he did not actively do anything to distribute the images that were used to prove his crime. The government proved distribution with the images one of the agents had downloaded from the "Teentrade" account. The account was on a file-sharing program, so the only person who had to press a button to transfer an image was the FBI agent. The FBI agent downloaded, McElmurry did not upload or email the images.

McElmurry concedes, however, that we have already held in *Budziak* that conduct such as his constitutes distribution,[19] and he merely wishes to preserve the issue. *Budziak* holds that maintaining child pornography in a shared folder, knowing that doing so will enable others to download it, if another person does download it, amounts to sufficient evidence to sustain a conviction for distributing the child pornography.[20]

The testimony at McElmurry's trial sufficed to show distribution under *Budziak*. The evidence was that sharing through GigaTribe could only be accomplished if the owner of the shared folder permitted it for a particular user, and an FBI agent impersonating one of McElmurry's permitted users downloaded contraband images from McElmurry's Teentrade account.

---

[19] *See United States v. Budziak*, 697 F.3d 1105, 1109 (9th Cir. 2012).

[20] *Id.*

### III.  Rule 403

McElmurry raises a more troubling issue under Federal Rule of Evidence 403.  The prosecution was not content to prove, with its evidence about his acts at the time charged, that McElmurry possessed and distributed the contraband images.    Instead, the prosecutor emphasized statements McElmurry had made four years earlier, in 2006, in connection with a state law conviction for child pornography, and in a letter written a few months before the present crime was charged to an inmate he evidently knew from his prior imprisonment.  In 2007 McElmurry had pleaded guilty to violating Cal. Penal Code § 311.11 (possession or control of matter depicting minor engaging in or simulating sexual conduct), and gone to prison for the crime.

Federal agents recorded an interview with McElmurry in 2006, and the portions helpful to the prosecution were played for the jury.  As the interview went on, McElmurry admitted that he had been looking at child pornography since he was 15-years-old (he was 30 at the time of the interview), looked at child pornography daily, traded images with people, and was indeed probably addicted to child pornography. McElmurry admitted in the 2006 interview that his pornography collection was around 40 or 50 gigabytes and included images of children as young as babies and images of bondage using children.

The government also provided the jury with a letter McElmurry had written to a prison inmate he evidently knew from his imprisonment for his 2006 crime.  The letter calls the police, probation officers and other authorities a series of obscene and insulting names, and brags that they will never find "the vast majority of what I located for you," because

"everything computer related was very securely encrypted."
McElmurry also argued in the letter against the laws treating
persons under 18-years-old as children with respect to
sexuality and adult relationships with them. Various parts of
the letter made it clear that he was writing to a friend "in
County" and was on parole himself.

McElmurry strenuously objected to this material in an in
limine motion and in arguments on his and the government's
in limine motions addressing admissibility of evidence.[21] The
government argued that the material should come in to prove
"knowledge" and "lack of mistake." Its theory was that the
2006 material would prove that McElmurry knew the images
downloaded by the FBI were on the computer, the reference
to encryption would prove that he knew how to encrypt, and
both would tend to prove that he was the user of the computer
linked to Teentrade. McElmurry had lived in the house but
no longer did. The government purported to be concerned
that he would raise a reasonable doubt about whether his 68-
year-old mother or 104-year-old grandmother, still living in
the house, were responsible for the child pornography, not
him. McElmurry argued that the 2006 interview was
evidence of propensity to commit child pornography crimes
rather than of one of the legitimate Rule 404(b) purposes, that
the letter was irrelevant, and that the risk of unfair prejudice
of both substantially outweighed their probative value under
Rule 403.

The district court ruled that the probative value was not
substantially outweighed by the danger of unfair prejudice,
and overruled the Rule 403 objections. The government

---

[21] We and our dissenting colleague differ on whether McElmurry
sufficiently made and preserved this objection. Dis. Op. at 27.

argues in its appellee's brief that the interview was admissible under Federal Rule of Evidence 414, but the record does not suggest the district court admitted it on that theory, and Rule 403 analysis would be required even if it had.**[22]** We therefore do not address Rule 414. The government also urges that appellant did not preserve the Rule 403 objection at trial, so he should be deemed to have waived it. But the point of in limine resolution of objections is to enable planning and avoid interruptions to a jury trial. Arguing and losing on the 403 objection sufficed to preserve it.**[23]** An objection to what the court had already ruled unobjectionable would have amounted to taking exception to an evidentiary ruling already made, which Federal Rule of Evidence 103 says is unnecessary.**[24]**

Our disagreement with our dissenting colleague is limited to the narrow question of whether the district court's ruling on the in limine objection was "definitive." We are agreed that under Federal Rule of Evidence 103(b) that "[o]nce the court rules definitively on the record, either before or at trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." When he first ruled

---

**[22]** *See United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001) (holding that evidence admitted under Rule 414 must still be evaluated under Rule 403).

**[23]** *See United States v. Varela-Rivera*, 279 F.3d 1174, 1178 (9th Cir. 2002) (holding even when it is "questionable how thoroughly the motion is explored," if the denial of the motion is "definitive," as it was here, the objection is preserved and reviewed for an abuse of discretion).

**[24]** *See* Fed. R. Evid. 103(b) ("Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal.").

during the hearing on in limine objections, the judge said, "My tentative is to allow the letters, providing that they can be proven up, provided there is a foundation for admissibility."  Subsequently, the judge interrupted himself in the discussion of another matter, to make this ruling definitive.  This subsequent ruling was that "the motion to exclude irrelevant evidence or marginally relevant evidence [the letters at issue] is denied based upon the proffer from the United States."  The court could have denied an in limine ruling and left the matter open until seeing what letters the government proposed to admit, but by this definitive ruling, it did not.  Defense counsel could not have made the objection any more specific because the government had still not stated what it would introduce.  In this respect, this case resembles *United States v. Varela-Rivera*, where we held that an in limine objection not stating the precise content of what was objected to nevertheless sufficed where the government had not clearly said precisely what it was going to offer.[25]  In this case, the judge's ruling was definitive and not tentative, after he so stated, and the defendant's in limine objection was as clear as it could be in light of the government's failure to state exactly what it proposed to offer.  Though the court could have denied an in limine ruling altogether and left the matter for trial, it did not, so its definitive in limine ruling preserved the matter without the need for further objection.

Much of the argumentation in this case, and in the district court's evaluation, focuses on Rule 404(b).  Rule 404(b)

---

[25] *Varela-Rivera*, 279 F.3d at 1178.

contains two subsections.[26]    Subsection (1) is a rule of exclusion, establishing that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[27]  Subsection (2) is a rule of inclusion, allowing discretionary admission of evidence of acts extrinsic to the crime charged for a purpose other than to prove character, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[28]  Even if the trial court determines that the evidence at issue does indeed tend to prove knowledge or one of the other subsection (2) grounds, a defendant is entitled to have the probative value weighed against the risk of unfair prejudice under Rule 403.[29]  Rule 404(b)(2) functions as an exception to 404(b)(1), but not as an exception to Rule 403. We need not decide whether the government correctly invoked Rule 404(b) because remand is necessary regardless, under Rule 403.

---

[26] Citations are to the Rules of Evidence as amended in 2011.  The district court and the briefs before us cite to the previous version of the Rules, but the difference is merely stylistic.  As the Advisory Committee Notes explain, the amendments are not substantive or intended to change any ruling on evidence admissibility.

[27] Fed. R. Evid. 404(b)(1).

[28] Fed. R. Evid. 404(b)(2).

[29] *See United States v. Cherer*, 513 F.3d 1150, 1157 (9th Cir. 2008) ("If evidence satisfies Rule 404(b), the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403.") (internal quotation marks omitted).

We addressed how the Rule 403 weighing must be done in our en banc decision in *United States v. Curtin*.[30] That decision requires that we reverse in this case. *Curtin* involved a defendant's massive collection of disgusting pornographic stories used to prove that he probably intended to commit a sex crime with a minor. The district judge was furnished with more than seventeen stories the prosecutor proposed to use as evidence, admitted five,[31] but could not bring himself to read more than two and snippets of the others.[32] Despite holding that on the facts of that case the stories were relevant to show intent, we reversed and remanded.[33] We held that the district court had failed to properly exercise its discretion because the judge "did not read every word of the five disputed stories in preparation for making its balancing decision."[34] The reason for our "every word" requirement was that "[t]he inflammatory nature and reprehensible nature of these abhorrent stories, although generally relevant, is such that a district court making a Rule 403 decision must know precisely what is in the stories."[35]

The right way to rule on such evidence, we held, is first for the government to "identify the *specific* purpose or purposes" for which admission was sought under Rule

---

[30] 489 F.3d 935 (9th Cir. 2007) (en banc).

[31] *Id.* at 942.

[32] *Id.* at 956, 956 n.8.

[33] *Id.* at 956, 959.

[34] *Id.* at 956.

[35] *Id.* at 957.

404(b)(2).**[36]**  Then the court must determine whether that specific purpose is an element of the crime or is a fact that the defendant has or will put at issue.  If so, "the court must *then* determine, before admitting the other acts evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403,"**[37]** "in order for its weighing discretion to be properly exercised and entitled to deference on appeal."**[38]**  "In this context, reliance on an offer of proof simply is not enough."**[39]** The district court must "read every word" of what will be before the jury.  The district court cannot very well decide that words it has not read or heard will not be unduly prejudicial, because the court does not know what the words will be, and a prosecutor's offer of proof about the words will not suffice.

We faced similar issues in *United States v. Waters*, albeit about radical environmentalists burning down buildings rather than about sex, and the admission of anarchist literature to prove the acts charged.**[40]**  In *Waters*, the district court admitted a folder of articles the defendant had apparently given to an alleged co-conspirator.  The record did not establish as unambiguously as in *Curtin* that the district judge had not read the material.  But the judge did not say he had read them, the record suggested that the court made its

---

**[36]** *Id.* (emphasis in original).

**[37]** *Id.* at 958 (emphasis in original).

**[38]** *Id.* at 957.

**[39]** *Id.*

**[40]** *United States v. Waters*, 627 F.3d 345 (9th Cir. 2010).

ruling before they were provided for reading, and at oral argument the government confirmed what the record suggested, that the district judge had not read them.[41]

In this case, as in *Waters*, the judge did not say in so many words that he had not read the material, but the record, briefs and oral argument appear to establish that he did not. The government's motion in limine did not attach a transcript or copy of the 2006 interview clips or the 2010 letter. The judge could not listen to or read the interview and read the letter if he did not have them, and it appears from the record that the prosecutor did not submit them to the court prior to the in limine Rule 403 ruling. And unfortunately, counsel did not cite or otherwise alert the district court to *Curtin*. During the hearing on the in limine motions, the judge said he would appreciate a "proffer" from the government of the 2006 interview and the related conviction. The oral argument largely focused on the prosecutor's suggestion that she was entitled to prove McElmurry's prior conviction because it was an element the jury had to decide for sentencing purposes. The prosecutor briefly summarized the 2006 interview[42] and

---

[41] *See id.* at 356 n.4.

[42] The prosecutor described the 2006 interview statements she "anticipate[d] using":

> Let me give you a little bit of background about this defendant. This defendant was apprehended in 2006 for basically the same type of conduct. During that conduct, he admitted post-*Miranda*, which was recorded. That statement was—has been turned over to defense counsel, and he admitted that he uses file sharing to share child pornography files. He admitted he uses encryption, which prevents individuals or anybody to get inside his computer. He admitted the

said she sought to use it to show knowledge of the child pornography and encryption, and "lack of mistake." Defense counsel conceded that the defense would be that McElmurry did not know the images were on the computer and that it was not his computer. The court ruled that the 2006 interview statements could come into evidence because they were relevant and were "more probative than prejudicial."

Defense counsel also objected to the letter to the inmate on the grounds that it was not relevant, was improper propensity evidence, lacked foundation, and was more prejudicial than probative. At the hearing, defense counsel asked what evidence the government sought to introduce, and for what purpose. The prosecutor replied that she had turned over to defense counsel a disc full of letters McElmurry

---

type of child pornography that he likes; the age, the sex, the types of acts.

We want to admit those statements to show knowledge in this case. Because in this case, we also have a file-sharing program, albeit a different one. In this case we have encryption. And to date, we still haven't been able to crack his computer. And the images that the agent was able to download through the file-sharing program are of the same nature, age, sex of the children.

So it's the government's position that the statements that he made from the prior incident in 2006 are directly relevant under 404(b) to prove knowledge, lack of mistake, some other type of defense like it wasn't me, that sort of thing.

wrote,[43] mentioning encryption and the type of material he has, which, she contended went to prove that the computer was his, not his mother's or grandmother's.[44]  She said she would have her exhibits in order the Friday before trial and defense counsel could then come over to her office and look at them.  The judge confirmed his Rule 403 ruling, and said the denial was "based upon the proffer," not that it was based on examining the evidence, which the court evidently did not have.  At a second in limine hearing, the judge said that with respect to presenting to the jury the images downloaded by the FBI agent from the desktop computer, "I may want to see the images beforehand so I can just have an idea of what I'm talking to the jury about," but he did not ask to see the 2006 interview transcript or the letter to the inmate.

---

[43] The prosecutor initially told defense counsel and the court that she intended to introduce letters written by McElmurry.  At trial, however, only one letter from 2010 was admitted along with envelopes addressed to McElmurry at the street address of his mother's house.

[44] The prosecutor described to the district court the letters she anticipated introducing at trial:

> What I turned over in discovery weeks ago to counsel were—was a disc full of typed letters that Mr. McElmurry wrote.  And within the letters, he talks about how he encrypts his computer and that law enforcement will never find it.  He talks about the type of material that he has.

> All goes, again, to knowledge that it wasn't his grandmother's computer, it wasn't his mother's computer, it wasn't some other person's computer, it was his.  And the material on the computer belongs to him.

Appellant's brief argues that we must reverse under *Curtin* because the district court had not read the material when it ruled, and relied merely on the proffer. Although McElmurry's brief discusses *Curtin* in five places, the government's brief does not discuss or even cite it, and offers no argument that the district court proceeded correctly despite *Curtin*. At oral argument, government counsel conceded that the district court had not read the inmate letter before admitting it and did not review the 2006 interview clips published to the jury before admitting them. Thus, as in *Waters*, the record, briefs and argument establish that the district court admitted the evidence without reading it or listening to it.

In *Waters*, we reversed under *Curtin* because the district court had not read the anarchist articles submitted as evidence before ruling for the prosecution on the Rule 403 objection. We held in *Waters* that the "district court had the responsibility to read every page of the articles" to properly weigh unfair prejudice against probative value under Rule 403,[45] thereby extending the "read every word" *Curtin* requirement beyond disgusting and inflammatory child pornography to "all district courts when performing the 403 balancing test."[46] In *Curtin*, we held that we would not give deference to the district court's Rule 403 ruling, as we ordinarily would for an evidentiary ruling, because the district court had not read the evidence before admitting it over the Rule 403 objection, so we cannot do so here.[47] And we

---

[45] *Waters*, 627 F.3d at 357.

[46] *Id.*

[47] *See Curtin*, 489 F.3d at 957.

expressly held that "reliance on an offer of proof simply is not enough,"[48] so the ruling in this case could not properly be made based on the prosecutor's description of the evidence at the in limine hearing.

Ordinarily the next step of our analysis would be deciding whether the government successfully bore its burden of proof that the error in admitting the evidence was harmless.[49]  That would be a hard argument to make.  The first thing the prosecutor said, even before stating his name, was that, "In his own words, the defendant, David McElmurry, is addicted to child pornography."  That line came from the 2006 interview.  In closing argument, the prosecutor played clips from the 2006 interview, and emphasized that "for half his life, [McElmurry] had been interested in viewing child pornography.  Half of his life.  He admitted that he was addicted."  An "addiction," of course, implies something that an individual cannot stop doing.  Another clip from the interview was played, prompting the prosecutor to conclude: "He likes all sorts of child pornography, including images involving babies."

The government in this case does not attempt to argue harmless error.  The government's position appears to have been that the evidence was needed to show that McElmurry knew what was on the computer and had encrypted it, in order to prove that what the FBI agent had downloaded came

---

[48] *Id.*

[49] *See Waters*, 627 F.3d at 358 ("The government bears the burden of proving harmlessness, and must demonstrate that it is more probable than not that the errors did not materially affect the verdict.") (internal quotation marks and alteration omitted).

from McElmurry and not his 68-year-old mother or his 104-year-old grandmother. The importance, rather than the marginality, of the evidence at issue appears to have been the government's basis for seeking its admission. The government has not claimed that the error was harmless, much less borne its burden of proof of harmlessness.

\* \* \*

McElmurry makes several additional arguments. First, he argues that the district court abused its discretion when it admitted the 2006 interview clips, the letter to the inmate, and the facts he admitted in his plea agreement for the 2006 crime, because the danger of unfair prejudice substantially outweighs their probative value. He also argues that this evidence was improper propensity evidence under 404(b). In light of our decision to reverse under *Curtin-Waters*, we decline to reach these issues.

Since we reverse on 403 error and do not decide on 404 error, the district court will have to analyze the evidence under both rules, with knowledge of what the evidence is. If the government makes a Rule 414 argument in district court, analysis under *United States v. LeMay* will be required.[50]

Because we reverse and remand for 403 error, we need not reach McElmurry's argument that the government

---

[50] *United States v. LeMay*, 260 F.3d 1018, 1027–28 (9th Cir. 2001) (noting that a court must "pay careful attention to both the significant probative value and the strong prejudicial qualities" of Rule 414 evidence and articulating "several factors that district judges *must* evaluate in determining whether to admit evidence of a defendant's prior acts of sexual misconduct") (emphasis added) (internal quotation marks omitted).

committed misconduct during opening and closing arguments by emphasizing the disputed evidence.

## Conclusion

Convictions for possessing child pornography and distributing the same child pornography do not amount to double jeopardy. Sharing the child pornography through a peer-to-peer network amounts to distribution, even though the distributor does not take some concrete affirmative action for the particular download that is charged as the distribution. The *Curtin-Waters* error compels reversal. A district court cannot properly exercise its discretion to decide whether the probative value of evidence objected to under Rule 403 outweighs the risk of unfair prejudice without examining the evidence.

The judgment is **VACATED** and this case is **REMANDED** for further proceedings consistent with this opinion.

CHRISTEN, Circuit Judge, concurring in part and dissenting in part:

I concur in Parts I and II of the majority opinion. McElmurry's convictions for distributing and possessing child pornography do not violate double jeopardy, and the district court correctly denied McElmurry's motion for a judgment of acquittal on the distribution charge. I also concur in Part III of the majority opinion with respect to the 2006 interview statements. Under *United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007) (en banc), and *United States v.*

*Waters*, 627 F.3d 345 (9th Cir. 2010), the district court erred by making a Rule 403 determination with respect to the interview statements without reviewing them. I dissent, however, from the portion of Part III that concludes that the district court made a similar error with respect to the letter exhibit that was introduced at trial.

The defendants in both *Curtin* and *Waters* objected at trial under Rule 403 to specific pornographic stories and specific pieces of anarchist literature, respectively, that the government sought to introduce. *See Waters*, 627 F.3d at 356 n.4; *Curtin*, 489 F.3d at 942. We held in each case that the district court abused its discretion by making a Rule 403 determination without having read the challenged material. *Waters*, 627 F.3d at 357; *Curtin*, 489 F.3d at 958. Thus, I understand *Curtin* and *Waters* to apply when a Rule 403 objection is raised regarding a specific piece of evidence, and the court definitively rules on the objection without reviewing that piece of evidence. That did not happen with respect to the letter in this case.

During execution of the search warrant at McElmurry's mother's house, FBI agents seized several items, one of which was a "disc full of typed letters that Mr. McElmurry wrote." McElmurry's pretrial motion in limine was quite general, arguing that "the government should not be allowed to introduce irrelevant or marginally relevant prejudicial evidence obtained" during the execution of the warrant, including "letters from an inmate" and "letters (presumably to an inmate)." In its opposition to McElmurry's motion, the government stated its intent to seek admission of "letters written by Defendant to others about his sexual interest in children." Neither McElmurry nor the government specified

which letter or letters they sought to introduce, or exclude, at trial.

The district court held a hearing on the motion in limine approximately two weeks before trial. McElmurry's counsel stated that his "question with regard to [the letters] is the relevance." Notably, he did not clearly articulate a prejudice objection or otherwise invoke Rule 403. The prosecutor extended an invitation to McElmurry's counsel "to come over to my office" and "look through all the items that were seized." The prosecutor also stated: "The Friday before trial, I'll have all of my exhibits in order and he can take a look at them at his leisure." From this, I understand that the government had not yet identified or marked its exhibits at the time of the pretrial hearing, and that the district court did not know which letters or excerpts of letters the government planned to introduce. The majority reaches the same conclusion.

It appears the court reasonably relied on McElmurry's counsel to take up the offered opportunity to review all the materials seized from McElmurry's mother's house and confer with the government about trial exhibits and possible redactions. Indeed, at a status conference held the day before trial, the prosecutor confirmed that McElmurry's counsel "came over to my office and viewed all of our exhibits."

One thing is certain: before trial, the district court did not make a definitive Rule 403 determination with respect to any of the letters. At the motion in limine hearing, the court stated: "My *tentative* [ruling] is to allow the letters, providing they can be proven up, provided there is a foundation for admissibility." (Emphasis added.) The court also denied McElmurry's "motion to exclude irrelevant evidence or

marginally relevant evidence." In doing so, the court signaled it was unwilling to categorically exclude evidence obtained during the execution of the search warrant, but it did not rule that the evidence would be admitted, or determine whether the probative value of any particular piece of evidence outweighed its prejudicial effect. The government acknowledged: "[The letters are] like any other . . . piece of evidence. Obviously, the United States has to lay the foundation, and to the extent [McElmurry] objects, he can object."

The actual exhibit had been marked by the time of the status conference held the day before trial. There was no objection to the exhibit and the court made no additional ruling at that time. Given this record, if McElmurry had a Rule 403 objection to the specific letter exhibit that was ultimately proffered at trial, it was his responsibility to articulate it. *See United States v. Lui*, 941 F.2d 844, 846 (9th Cir. 1991) ("A pretrial motion in limine preserves for appeal the issue of admissibility of that evidence if the substance of the objection has been thoroughly explored during the hearing and the district court's ruling permitting introduction of evidence was explicit and definitive."). He did not do so.[1]

---

[1] The letter that was eventually proffered as an exhibit consisted of seven, single-spaced typed pages. When the government offered it at trial, McElmurry's only objection was lack of foundation. That objection was overruled. The second page of the letter was briefly published to the jury on an overhead screen. The government emphasized a highlighted portion regarding computer encryption before taking the letter down. It does not appear from the trial transcript that any other pages of the letter were published to the jury during the presentation of the evidence. The entire letter was eventually sent to the jury room, but before that, outside the presence of the jury, the government stated it would meet and confer with McElmurry's counsel about which parts of the letter McElmurry's counsel

The majority opinion concludes that McElmurry's motion in limine and his argument at the pretrial hearing preserved a Rule 403 objection to the letter exhibit that was ultimately introduced, citing Federal Rule of Evidence 103(b) and *United States v. Varela-Rivera*, 279 F.3d 1174 (9th Cir. 2002). But these sources make clear that a party is required to renew an objection at trial when the pretrial ruling is not definitive. *See* Fed. R. Evid. 103(b); *Varela-Rivera*, 279 F.3d at 1177.[2] Here, because the district court's pretrial ruling did not definitively address the specific letter exhibit that the government ultimately sought to introduce and because McElmurry did not object at trial under Rule 403, I would review for plain error the district court's determination that

---

wanted to redact. The district court directed that any reference to jail time and a prior arrest be redacted and then asked, "Is there anything else?" McElmurry's counsel did not respond. It appears the meet and confer in fact took place, because the record shows the letter sent to the jury room as Exhibit 32A had been redacted.

[2] In *Varela-Rivera*, the government sought to introduce expert witness testimony concerning the modus operandi of drug couriers. 279 F.3d at 1176. The defendant objected to the introduction of this type of expert testimony twice before trial and was overruled each time. *Id.* The defendant did not object at trial to the government's expert's testimony on "methods and techniques used by narcotics smugglers." *Id.* at 1176–77. On this record, we held that the defendant had preserved an objection to the trial testimony because the trial court's denial of the defendant's pretrial objections was "explicit and definitive." *Id.* at 1178. In other words, the court's denial was clearly a decision to permit modus operandi expert testimony, even though the precise content of that testimony was unclear. *See id.* On the facts of this case, by contrast, the district court's denial of McElmurry's pretrial motion in limine concerning physical evidence seized during the search of his mother's house was not a decision to permit the introduction of the specific letter exhibit that was ultimately proffered at trial.

the probative value of the letter outweighed its prejudicial effect, and affirm the district court's ruling.

By applying the "read every word" rule from *Curtin* and *Waters* to the letter in this case, the majority opinion expands the rule in a way I fear will be unworkable. As the majority opinion acknowledges, "the point of in limine resolution of objections is to enable planning and avoid interruptions to a jury trial." But the court's opinion arguably requires district courts to review all materials the government *might* introduce at trial—before the government has even specifically identified them—in order to give even a tentative ruling on a pretrial motion in limine. Such a time-consuming burden will almost certainly delay pretrial rulings and deprive trial counsel of helpful guidance needed for trial preparation and settlement negotiations. For these reasons, I respectfully dissent.