**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

RANDLY IRVIN BEGAY, AKA Randly Begay,
*Defendant-Appellant.*

No. 14-10080

D.C. No.
3:13-cr-08073-
NVW-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submission Deferred October 20, 2015
Submitted May 26, 2016
Submission Vacated and Deferred March 29, 2017
Resubmitted August 19, 2019
San Francisco, California

Filed August 19, 2019

Before: Dorothy W. Nelson, Richard R. Clifton,
and N. Randy Smith, Circuit Judges.

Opinion by Judge D.W. Nelson;
Dissent by Judge N.R. Smith

## SUMMARY[*]

### Criminal Law

The panel affirmed a conviction for second-degree murder (18 U.S.C. §§ 1111 and 1153), reversed a conviction for discharging a firearm during a "crime of violence" (18 U.S.C. § 924(c)(1)(A)), reversed a mandatory restitution order, and remanded for resentencing.

Affirming the second-degree murder conviction, the panel held that the district court did not plainly err in failing to instruct the jury on absence of "heat of passion" as an element of second-degree murder.

The panel held that because second-degree murder can be committed recklessly, it does not categorically constitute a "crime of violence" under the elements clause, 18 U.S.C. § 924(c)(3)(A). Because in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), second-degree murder likewise cannot constitute a crime of violence under the residual clause, 18 U.S.C. § 924(c)(3)(B), the panel concluded that the defendant's § 924(c) conviction cannot stand.

The panel held that because second-degree murder is not categorically a crime of violence, the district court erred in imposing mandatory restitution under 18 U.S.C. § 3663A.

Dissenting from Parts II and III, Judge N.R. Smith would hold that second-degree murder is a crime of violence under

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 924(c)(3)(A).  He wrote that the majority goes too far in extending the concept of recklessness to include malice aforethought, which, including "depraved heart" murder, requires conduct well beyond mere recklessness.

## COUNSEL

M. Edith Cunningham (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Tucson, Arizona; for Defendant-Appellant.

Karla Hotis Delord (argued), Assistant United States Attorney; Krissa M. Lanham, Deputy Appellate Chief; Robert L. Miskell, Appellate Chief; United States Attorney's Office, Phoenix, Arizona; for Plaintiff-Appellee.

## OPINION

D.W. NELSON, Circuit Judge:

Randly Irvin Begay appeals his jury conviction and sentence for second-degree murder under 18 U.S.C. §§ 1111 and 1153 and discharging a firearm during a "crime of violence" in violation of 18 U.S.C. § 924(c)(1)(A). We affirm Begay's conviction for second-degree murder. We hold that second-degree murder is not a "crime of violence," reverse the § 924(c) count of conviction, reverse the mandatory restitution order, and remand for resentencing.

Begay's conviction is AFFIRMED in part, REVERSED in part, and REMANDED for resentencing.

## FACTS AND PROCEEDINGS

On March 4, 2013, Randly Begay, a Native American, shot Roderick Ben in the head with a handgun, killing Ben. Begay was charged with second-degree murder and discharging a firearm during a "crime of violence."

After a few hours of drinking and smoking methamphetamine, Begay, Ben, Begay's nephew Lionel Begay, and Begay's girlfriend Meghan Williams were sitting inside a van parked in front of Begay's parents' residence in Tuba City, Arizona, located within the Navajo Nation Indian Reservation. While sitting inside the van, Williams and Begay were arguing about Williams' alleged infidelity, including Begay's accusations that she had been cheating on him with Ben. Begay stated he was tired of people thinking that he was a "bitch" because of Williams cheating on him. During the argument, Begay pulled out a gun and laid it on his leg. Ben saw the gun and told Begay not to shoot the windows of the van. Begay continued to argue with Williams, stating that he was not going to be a "bitch" anymore and that he was not scared to go to prison for life. Begay then shot Ben in the head once.

At trial, Begay's theory of defense was that someone else in the car had shot Ben. In closing argument, Begay's attorney briefly argued that Begay lacked the requisite malice because he did not act deliberately. During closing argument, the government argued that Begay intentionally shot Ben because he was angry about Williams' alleged infidelity with Ben. Begay and the government submitted joint jury instructions, requesting an instruction on second-degree murder only. Begay's attorney did not request a voluntary or involuntary manslaughter instruction, nor did he object to the instructions as presented.

The jury, instructed to find second-degree murder to be a "crime of violence," convicted Begay of second-degree murder (Count One) and discharging a firearm during a "crime of violence" under 18 U.S.C. § 924(c)(1)(A)(iii) (Count Two). The district court sentenced Begay to 204 months' imprisonment on Count One and a consecutive term of 120 months' imprisonment on Count Two. The district court imposed mandatory restitution under 18 U.S.C. § 3663A in the amount of $23,622. Begay appeals his conviction on both counts as well as the restitution order.

## JURISDICTION

An "Indian" who commits murder in "Indian country" is subject to applicable federal criminal laws. 18 U.S.C. § 1153(a). The location of the shooting here, the Navajo Nation Indian Reservation, is "Indian country" for the purposes of § 1153. 18 U.S.C. § 1151. We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

### I

"[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Mullaney v. Wilbur*, 421 U.S. 684, 704 (1975). Where, as here, a defendant does not object to the jury instructions given by the district court, we review for plain error. *United States v. Matsumaru*, 244 F.3d 1092, 1102 (9th Cir. 2001).

On appeal, Begay argues for the first time that the district court erred by failing to instruct the jury that, in order to establish the element of malice, the government had to prove

beyond a reasonable doubt that Begay did not act in the heat of passion or upon a sudden quarrel. At trial, Begay's attorney did not request a voluntary manslaughter instruction, object to the absence of such an instruction, or introduce evidence of sudden quarrel or heat of passion at trial. Begay's theory of defense was that he did not kill the victim. *Cf. United States v. Anderson*, 201 F.3d 1145, 1153 (9th Cir. 2000) ("A defendant arguing voluntary manslaughter 'attempts to negate the malice element by claiming, in essence, that she was not acting maliciously because some extreme provocation . . . severely impaired her capacity for self-control in committing the killing.'" (quoting *United States v. Quintero*, 21 F.3d 885, 890 (9th Cir. 1994))).

During closing argument, Begay's attorney briefly argued that the government could not prove malice because Begay did not act deliberately, but did not argue that Begay acted in heat of passion or upon a sudden quarrel. The argument Begay's attorney made regarding malice centered on Begay's lack of deliberation, arguing "to deliberate and to intend to do something is not to simply be high and pull the trigger." Begay's attorney did not argue that Begay lacked malice because he shot Ben in heat of passion or because he was provoked. *See Anderson*, 201 F.3d at 1152 ("A failure to give a jury instruction, even if error, does not seriously affect the fairness and integrity of judicial proceedings if the defense at trial made no argument relevant to the omitted instruction.").

Although the government introduced evidence at trial that Begay may have been angry at the time of the shooting and discussed Begay's anger during closing argument, the evidence, arguments, and jury instructions taken as a whole did not "properly present" the issue of heat of passion or

provocation to the jury. *See United States v. Roston*, 986 F.2d 1287, 1290 (9th Cir. 1993) (holding that the issue of heat of passion was not properly presented where there was insufficient evidence of provocation and the defendant's theory of the case was that he did not kill the victim); *cf. United States v. Lesina*, 833 F.2d 156, 160 (9th Cir. 1987) (finding that the district court erred by failing to give defendant's requested instructions regarding accidental killing and heat of passion where "that defense [was] raised"). As such, the district court did not plainly err in failing to instruct the jury on absence of "heat of passion" as an element of second-degree murder. We therefore affirm Begay's conviction under Count One for second-degree murder.

## II

"We review de novo whether a criminal conviction is a 'crime of violence' [under section 924(c)(3)] and whether a jury instruction misstated the elements of an offense." *United States v. Benally*, 843 F.3d 350, 353 (9th Cir. 2016). Where, as here, a party raises an argument for the first time on appeal, we generally review for plain error; however, we are not limited to plain error review "when we are presented with a question that 'is purely one of law' and where 'the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court.'" *United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1106 (9th Cir. 2009) (quoting *United States v. Echavarria-Escobar*, 270 F.3d 1265, 1267–68 (9th Cir. 2001)). Here, whether second-degree murder is a crime of violence is a pure question of law, and the government, which has fully briefed the issue, suffers no prejudice. We therefore apply de novo review. *See id.* at 1106 (reviewing de novo whether California attempted

robbery is a crime of violence despite the petitioner's failure to raise the issue before the district court).

Begay was convicted of discharging a firearm during a "crime of violence" under 18 U.S.C. § 924(c). On appeal, Begay argues that second-degree murder does not qualify as a "crime of violence." To determine whether second-degree murder is a "crime of violence" we apply the "categorical approach" laid out in *Taylor v. United States*, 495 U.S. 575 (1990). *Benally*, 843 F.3d at 352. Based on the facts of this case, it may be hard to understand how the shooting of Ben by Begay might not be a "crime of violence." Under the categorical approach, however, we do not look to the facts underlying the conviction, but "compare the elements of the statute forming the basis of the defendant's conviction with the elements of" a "crime of violence." *See Descamps v. United States*, 570 U.S. 254, 257 (2013). The defendant's crime cannot be a categorical "crime of violence" if the conduct proscribed by the statute of conviction is broader than the conduct encompassed by the statutory definition of a "crime of violence." *See id.*

If the statute of conviction is overbroad, we may ask whether the statute is divisible, and, if it is, apply the "modified categorical approach" to determine which "statutory phrase" formed the basis of the defendant's conviction. *Descamps*, 570 U.S. at 263 (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)). Where, as here, the government has not argued that the statute of conviction is divisible, we need not conduct a modified categorical analysis. *See United States v. Walton*, 881 F.3d 768, 774–75 (9th Cir. 2018) (declining to conduct a modified categorical analysis because the government failed to argue that the statute of conviction was divisible).

Accordingly, we compare the elements of 18 U.S.C. § 1111, the second-degree murder statute, to the definition of a "crime of violence" found in § 924(c)(3). A "crime of violence" is defined as a felony that

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subsection (A) is commonly known as the "elements clause" and subsection (B) is commonly known as the "residual clause." Because the Supreme Court declared 18 U.S.C. § 924 (c)(3)(B) unconstitutionally vague in *United States v. Davis*, 139 S.Ct. 2319, 2336 (2019), we need only determine whether second-degree murder constitutes a crime of violence under the "elements clause" in subsection (A).

## A

Second-degree murder does not constitute a crime of violence under the elements clause—18 U.S.C. § 924(c)(3)(A)—because it can be committed recklessly.

"[B]ecause the wording of [18 U.S.C. § 924(c)(3) and 18 U.S.C. § 16] is virtually identical, we interpret their plain language in the same manner." *Benally*, 843 F.3d at 354 (analyzing the required mental state for § 924(c)(3) by looking to case law interpreting § 16); *see also Davis*, 139 S.Ct. at 2326 ("Like § 924(c)(3), § 16 contains an elements clause and a residual clause. The only difference is

that § 16's elements clause, unlike § 924(c)(3)'s elements clause, isn't limited to felonies . . . ."). 18 U.S.C. § 16 defines the term "crime of violence" as:

> (a) an offense that has an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) *any other offense that is a felony and* that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

(emphasis added). The only substantive difference is that the felony requirement applies to both subsections of § 924(c)(3) and only to subsection (b) of § 16, but this difference "does not affect the operative language used to interpret the statute's requisite mental state." *Benally*, 843 F.3d at 354 n.1; *see also Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality) (holding that a term is given the same meaning "when Congress uses the same language in two statutes having similar purposes.").

A "crime of violence" requires intentional conduct. In *Leocal v. Ashcroft*, the Supreme Court discussed the mens rea necessary to commit a "crime of violence" under 18 U.S.C. § 16. 543 U.S. 1 (2004). The Supreme Court reasoned that § 16's requirement that force be used "against" someone or something suggests that "crimes of violence" require "a higher degree of intent than negligent or merely accidental conduct." *Leocal*, 543 U.S. at 9–11.

We have since interpreted *Leocal*'s reasoning to hold that "crimes of violence," as defined in both § 16 and

§ 924(c), require purposeful conduct. *Benally*, 843 F.3d at 353–54 (applying *Leocal* and *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (en banc) to find that involuntary manslaughter, which requires only gross negligence, is not a crime of violence under § 924(c)); *Covarrubias Teposte v. Holder*, 632 F.3d 1049, 1053 (9th Cir. 2011) (concluding from *Leocal*, *Fernandez-Ruiz*, and *United States v. Gomez-Leon*, 545 F.3d 777 (9th Cir. 2008) that an intentional use of force was required for a crime of violence as defined in either subsection of 18 U.S.C. § 16); *Gomez-Leon*, 545 F.3d at 787 (holding that a crime of violence under 18 U.S.C. § 16 "must require proof of an *intentional* use of force or a substantial risk that force will be *intentionally* used during its commission"); *Fernandez-Ruiz*, 466 F.3d at 1130 (holding that crimes that can be committed recklessly are not "crimes of violence" for the purposes of § 16 because reckless conduct "is not purposeful").

The government argues that *Voisine v. United States*, — U.S. — , 136 S.Ct. 2272 (2016) "implicitly overruled *Fernandez-Ruiz*." As we recently explained, "*Voisine* expressly left open the question that *Fernandez-Ruiz* answered" and is not "so clearly irreconcilable with *Fernandez-Ruiz*'s reasoning that this three-judge panel is no longer bound by the precedent of our court." *United States v. Orona*, 923 F.3d 1197, 1203 (9th Cir. 2019). In *Voisine*, the Supreme Court held that the definition of "misdemeanor crime of domestic violence" in 18 U.S.C. § 921(a)(33)(A) includes reckless assaults. *Id.* at 2278. In doing so, however, the Court explicitly stated, "our decision today concerning § 921(a)(33)(A)'s scope does not resolve whether § 16 includes reckless behavior. Courts have sometimes given these two statutory definitions divergent readings in light of differences in their contexts and purposes, and we do not foreclose that possibility with respect to the required mental

states." *Id.* at 2280 n.4. Given that explicit qualification, the unique "context[] and purpose[]" of domestic violence, and the differences in statutory text between the provision at issue and the one interpreted in *Voisine*, we continue to apply our case law interpreting 18 U.S.C. § 16 to 18 U.S.C. § 924(c)(3).[1] *See Voisine*, 136 S.Ct. at 2290 (limiting the holding to the context of misdemeanor domestic violence); *United States v. Castleman*, 572 U.S. 157, 162–63 (2014) (same); *Benally*, 843 at 354 (continuing to apply our precedent interpreting § 16 in interpreting § 924(c)(3) "because the wording of the two statutes is virtually identical"). It follows from our precedent that a crime of violence under 18 U.S.C. § 924(c)(3) requires the intentional use of force.

The elements of second-degree murder are that the defendant (1) "unlawfully kill[ed] a human being" (2) "with malice aforethought." 18 U.S.C. § 1111(a); Ninth Circuit Model Criminal Jury Instruction 8.108. "[M]alice aforethought covers four different kinds of mental states: (1) intent to kill; (2) intent to do serious bodily injury; (3) depraved heart (i.e., reckless indifference); and (4) intent to commit a felony." *United States v. Pineda-Doval*, 614 F.3d 1019, 1038 (9th Cir. 2010). As such, second-degree murder may be committed recklessly—with a depraved heart mental state—and need not be committed willfully or intentionally. *See United States v. Houser*, 130 F.3d 867, 871–72 (9th Cir. 1997) ("Malice aforethought does not require an element of willfulness if the existence of that

---

[1] *See also Gonzales-Ramirez v. Sessions*, 727 F. App'x 404, 405 n.7 (9th Cir. 2018) (unpublished) (concluding that *Voisine* "does not affect our § 16(a) case law.").

malice is inferred from the fact that defendant acted recklessly with extreme disregard for human life.").

It is of no consequence that the recklessness required for second-degree murder must be "extreme" and goes beyond ordinary recklessness. In *Gomez-Leon*, we made clear that, in order to constitute a crime of violence, "the underlying offense must require proof of an *intentional* use of force or a substantial risk that force will be *intentionally* used during its commission." 545 F.3d at 787. "[O]ur precedent seems squarely to place crimes motivated by intent on a pedestal, while pushing off other very dangerous and violent conduct that, because not intentional, does not qualify as a 'crime of violence.'" *Covarrubias*, 632 F.3d at 1053. Reckless conduct, no matter how extreme, is not intentional.

Second-degree murder also does not involve a "substantial risk that force will be *intentionally* used during its commission." *Gomez-Leon*, 545 F.3d at 787. In *Covarrubias*, we held that a California offense prohibiting the malicious and willful discharge of a firearm at an inhabited dwelling was not a "crime of violence" because it could be committed recklessly, not just intentionally. *Covarrubias*, 632 F.3d at 1053–55. Although we conducted our analysis under § 16(b) because the BIA rested its decision on subsection (b), *id.* at 1052, the analysis regarding intent bears upon either subsection of § 16, and by analogy, 18 U.S.C. § 924(c)(3). *See, e.g.*, *Gomez-Leon*, 545 F.3d at 787 (requiring intentional use of force for a crime of violence under either subsection of § 16); *Benally*, 843 F.3d at 354. In contrast to crimes like burglary that can be committed only intentionally, "with a crime committed recklessly, it is unlikely that the reckless actor will, in response to external events, form an intent to use force in furtherance of his crime." *Covarrubias*, 632 F.3d at 1055.

"Classic examples of second-degree murder include shooting a gun into a room that the defendant knows to be occupied, a game of Russian roulette, and driving a car at very high speeds along a crowded main street . . . ." *Pineda-Doval*, 614 F.3d at 1039. For purposes of our analysis, these examples are substantively indistinguishable from the offense—"Shooting at an Inhabited Dwelling or Vehicle"— that we held was not categorically a crime of violence in *Covarrubias*. This risk that a crime could escalate to the use of intentional force is no more substantial for a defendant who recklessly kills than it is for a defendant who recklessly shoots at a house.

The cases the government cites do not squarely address whether second-degree murder is a crime of violence. Instead, in those cases, we found that other challenges to § 924(c) convictions lacked merit. *See, e.g.*, *United States v. Percy*, 250 F.3d 720 (9th Cir. 2001) (addressing the Sixth Amendment right to counsel and prosecutorial misconduct); *Houser*, 130 F.3d 867 (discussing the role of the jury and the mens rea required for second-degree murder). More recently, in *United States v. JJ*, we reviewed a district court's decision to try a juvenile as an adult under the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 *et seq.* *United States v. JJ*, 704 F.3d 1219 (9th Cir. 2013). In *JJ*, the question of whether "second-degree murder, if committed by an adult, would be a felony crime of violence" was not in dispute. *Id.* at 1222. Far from "holding" that second-degree murder is a "crime of violence" for purposes of § 924(c), *JJ* focused on when it might be in the interest of justice to try a juvenile as an adult. *Id.* Because second-degree murder can

be committed recklessly, rather than intentionally, it does not categorically constitute a crime of violence.[2]

### B

Second-degree murder is not categorically a crime of violence under the elements clause, 18 U.S.C. § 924(c)(3)(A). And, pursuant to *Davis*, second-degree murder cannot constitute a crime of violence under the residual clause, section 924(c)(3)(B), as the residual clause is unconstitutionally vague. Begay's § 924(c) conviction for discharging a firearm during and in relation to a crime of violence therefore cannot stand under either the elements clause or residual clause of § 924(c)(3). We reverse Count Two of his conviction.

### III

We review the legality of a restitution order de novo and the factual findings supporting the order for clear error. *United States v. Luis*, 765 F.3d 1061, 1065 (9th Cir. 2014) (quoting *United States v. Brock-Davis*, 504 F.3d 991, 996 (9th Cir. 2007)). Where, as here, a defendant raises an objection to a restitution order for the first time on appeal, we review for plain error. *United States v. Van Alystne*, 584 F.3d 803, 819 (9th Cir. 2009).

18 U.S.C. § 3663A directs a district court to impose mandatory restitution where a defendant is convicted of a crime of violence, as defined in 18 U.S.C. § 16. 18 U.S.C.

---

[2] In holding that second-degree murder does not qualify as a categorical crime of violence because it can be committed recklessly, we do not reach Begay's argument that second-degree murder does not qualify as a categorical crime of violence for the additional reason that it can be committed without the use of violent force.

§ 3663A(c)(1)(A)(i). We conclude that the district court plainly erred in imposing mandatory restitution under 18 U.S.C. § 3663A because second-degree murder is not categorically a crime of violence, and vacate the mandatory restitution order. In light of this disposition, we need not address Begay's claim that the district court failed to make the necessary findings for the restitution order.

## CONCLUSION

We AFFIRM Count One of Begay's conviction for second-degree murder. We REVERSE Count Two of Begay's conviction for discharging a firearm during a "crime of violence" under 18 U.S.C. § 924(c)(1)(A), VACATE the mandatory restitution order imposed under 18 U.S.C. § 3663A, and REMAND for resentencing.

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.**

SMITH, N.R., Circuit Judge, dissenting from Parts II & III of the Majority's opinion:[1]

MURDER[2] in the second-degree is NOT a crime of violence??? Yet attempted first-degree murder,[3] battery,[4] assault,[5] exhibiting a firearm,[6] criminal threats[7] (even attempted criminal threats[8]), and mailing threatening

---

[1] I concur in Part I of the Majority's opinion.

[2] Murderers are "deserving of the most serious forms of punishment." *Graham v. Florida*, 560 U.S. 48, 69 (2010), *as modified* (July 6, 2010). The Supreme Court recognized "a line between homicide and other serious violent offenses against the individual," because "[s]erious nonhomicide crimes may be devastating in their harm but in terms of moral depravity and of the injury to the person and to the public, they cannot be compared to murder in their severity and irrevocability." *Id.* (citation, quotation marks, and alteration omitted).

[3] *United States v. Studhorse*, 883 F.3d 1198, 1206 (9th Cir.), *cert. denied*, 139 S. Ct. 127 (2018) (Wash. Rev. Code § 9A.32.030(1)).

[4] *United States v. Perez*, No. 17-10216, 2019 WL 3022334, *5 (9th Cir. July 11, 2019) (Cal. Penal Code § 243(d)).

[5] *United States v. Vasquez-Gonzalez*, 901 F.3d 1060, 1068 (9th Cir. 2018) (Cal. Penal Code § 245(a)(1)); *United States v. Cabrera-Perez*, 751 F.3d 1000, 1007 (9th Cir. 2014) (Ariz. Rev. Stat. §§ 13-1203, 13-1204).

[6] *Bolanos v. Holder*, 734 F.3d 875, 878 (9th Cir. 2013) (Cal. Penal Code § 417.3).

[7] *Rosales-Rosales v. Ashcroft*, 347 F.3d 714, 717 (9th Cir. 2003) (Cal. Penal Code § 422).

[8] *Arellano Hernandez v. Lynch*, 831 F.3d 1127, 1132 (9th Cir. 2016) (Cal. Penal Code §§ 422, 664).

communications[9] are crimes of violence.  How can this be?
"I feel like I am taking crazy pills."[10]

This unbelievable result (arising because of the
Majority's opinion) stems from the Majority's
misapplication of the categorical approach to conclude that
second-degree murder cannot serve as a predicate crime of
violence under 18 U.S.C. § 924(c)(3)(A).  Never mind that
the Majority's result is contrary to Supreme Court precedent
and our precedent[11] and further defies reality and logic.  *See*
*United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018), *cert.*
*denied*, 139 S. Ct. 844, 202 L. Ed. 2d 612 (2019) (noting that
"the categorical approach must be grounded in reality, logic,
and precedent, not flights of fancy").

"Malice aforethought"[12] is a required element of first-
and second-degree murder.  18 U.S.C. § 1111(a).  Rather
than use "malice aforethought" as a clear (and easy)
distinction for a crime of violence, the Majority plucks the

---

[9] *United States v. De La Fuente*, 353 F.3d 766, 770–71 (9th Cir.
2003) (18 U.S.C. § 876(c)).

[10] Ben Stiller (Director), Zoolander [Film], United States:
Paramount Pictures (2001).

[11] Our sister circuit has also recognized that it would be illogical to
find that "the most morally repugnant crime—murder—would not be a
crime of violence while at the same time permitting many less-serious
crimes to be so classified."  *In re Irby*, 858 F.3d 231, 237 (4th Cir. 2017)
(citation and quotation marks omitted) (analyzing crime of violence
under the force provision).

[12] "[M]alice aforethought covers four different kinds of mental
states: (1) intent to kill; (2) intent to do serious bodily injury;
(3) depraved heart (i.e., reckless indifference); and (4) intent to commit
a felony."  *United States v. Pineda-Doval*, 614 F.3d 1019, 1038 (9th Cir.
2010).

term "recklessness" out of the defined term of "depraved heart murder" and rejects any notion that there are varying *degrees of recklessness* in order to hold that second-degree murder is not a crime of violence. As a result, the term "crime of violence" now has no real or logical meaning. I do not understand how this can be.

## I.

Prior to the Comprehensive Crime Control Act of 1984 (CCCA), when Congress enacted the term "crime of violence," it outlined specific crimes that met the definition. *See* Narcotic Addict Rehabilitation Act of 1966, Pub. L. No. 89-793, tit. I, § 2901, 80 Stat. 1438 (1966) (defining "crime of violence" as "voluntary manslaughter, murder, rape, mayhem, kidnaping, robbery, burglary or housebreaking in the nighttime, extortion accompanied by threats of violence, assault with a dangerous weapon or assault with intent to commit any offense punishable by imprisonment for more than one year, arson punishable as a felony, or an attempt or conspiracy to commit any of the foregoing offenses"), *repealed by* Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, tit. II, § 218(a)(6), 98 Stat. 1837 (1984); Federal Firearms Act of 1938, Pub. L. No. 75-785, § 6, 52 Stat. 1250 (1938) (defining "crime of violence" as "murder, manslaughter, rape, mayhem, kidnaping, burglary, housebreaking; assault with intent to kill, commit rape, or rob; assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment for more than one year"), *repealed by* Gun Control Act of 1968, Pub. L. No. 90-618, § 203, 82 Stat. 1214 (1968). Upon enacting the CCCA, Congress changed the definition of "crime of violence" to include "an offense that is a felony" and that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

18 U.S.C. §§ 16(a), 924(c)(3)(A).  However, Congress has indicated that murder is crime of violence on several occasions since the CCCA enactment.  *See* 132 Cong. Rec. 7698 (April 16, 1986) (explaining the need to expand the Armed Career Criminal Act beyond robbery and burglary to include murder, rape, and heroin smuggling); H.R. Rep. 105-86, *76–77 (1997) (noting that "[t]he age at which a juvenile may be proceeded against as an adult drops to 13 if the crime of violence alleged is assault, murder [citing 18 U.S.C. § 1111(a)], attempted murder, or if the juvenile possessed a firearm during the offense, robbery, bank robbery, aggravated sexual abuse." (footnotes omitted)).

Because Congress no longer provided a specific list of offenses that were "crimes of violence," courts were left to apply the categorical approach to determine which offenses met the new definition.  Thus, since the enactment of the CCCA, the interpretation of the term "crime of violence" has evolved in the Supreme Court and the Ninth Circuit. Notably, as demonstrated below, the Ninth Circuit's interpretation of included crimes has narrowed over time.

Initially, we rejected an argument that aggravated assault with a recklessness mens rea was a not crime of violence. *See United States v. Ceron-Sanchez*, 222 F.3d 1169, 1172–73 (9th Cir. 2000), *overruled by Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (en banc).  One year later, we declined to extend the holding to cover "negligent conduct," instead concluding that a "crime of violence" could not be committed if a person acted "negligently— rather than intentionally or recklessly."  *United States v. Trinidad-Aquino*, 259 F.3d 1140, 1144–45 (9th Cir. 2001). Thereafter, in *Leocal v. Ashcroft*, the Supreme Court defined a crime of violence when it interpreted the phrase "use of physical force against another" to mean "a higher degree of

intent than negligent or merely accidental conduct." 543 U.S. 1, 9 (2004) (alterations omitted).[13] Thus, *Leocal* effectively affirmed our decision in *Trinidad-Aquino*. In 2005, we determined that a crime of violence does not include acts that are "gross[ly] negligen[t] (but without malice aforethought)." *See Lara-Cazares v. Gonzales*, 408 F.3d 1217, 1221 (9th Cir. 2005). The next year, we rejected our prior case law and followed our sister circuits to conclude that acts "involving the reckless use of force" were also not crimes of violence. *See Fernandez-Ruiz*, 466 F.3d at 1129.[14]

Following *Leocal* and *Fernandez-Ruiz*, we next overruled our prior precedent, which had made involuntary manslaughter,[15] under 18 U.S.C. § 1112, a crime of violence. *United States v. Benally*, 843 F.3d 350, 354 (9th Cir. 2016) (holding that *United States v. Springfield*, 829 F.2d 860 (9th Cir. 1987) was "clearly irreconcilable with the reasoning and the results of *Leocal* and *Fernandez-Ruiz* and

---

[13] *Leocal* did not address "whether a state or federal offense that requires proof of the reckless use of force against a person or property of another qualifies as a crime of violence under 18 U.S.C. § 16." *Leocal*, 543 U.S. at 13.

[14] In *United States v. Orona*, we concluded that *Voisine v. United States*, 136 S. Ct. 2272, 2279–82 (2016) did not overrule *Fernandez-Ruiz*. 923 F.3d 1197, 1202–03 (9th Cir. 2019).

[15] Manslaughter can be a "lesser included offense" of second-degree murder. *See United States v. Anderson*, 201 F.3d 1145, 1148 (9th Cir. 2000). An involuntary manslaughter instruction is proper when the defense theory is that the killing was accidental or self-defense. *Id.* at 1151–52. A voluntary manslaughter instruction is proper when defense "introduces evidence of sudden quarrel or heat of passion." *United States v. Quintero*, 21 F.3d 885, 890 (9th Cir. 1994).

is no longer good law"). In *Benally*, we recognized that "[a] conviction for involuntary manslaughter requires, at a minimum, a mental state of gross negligence, defined as a wanton or reckless disregard for human life."[16] *Id.* at 353 (internal quotation marks and citation omitted).

Against this historical backdrop of interpreting the term "crime of violence," the Majority now concludes "[s]econd-degree murder does not constitute a crime of violence under the elements clause—18 U.S.C. § 924(c)(3)(A)—because it can be committed recklessly." Maj. Op. 9  However, the "recklessness" (the Majority now cites) arises only when one can be found to possess malice aforethought because of a "depraved-heart murder," wherein "a defendant's conduct must create a '*very high* degree of risk' of injury to other persons, he must be aware of that risk, and he cannot have a justifiable reason for taking that risk." *Pineda-Doval*, 614 F.3d at 1038 (footnote omitted).  In making this decision, the Majority ignores the differences between "gross negligence" and "malice aforethought," concluding instead that "[i]t is of no consequence that the recklessness required for second-degree murder must be 'extreme' and goes beyond ordinary recklessness."[17]  Maj. Op. 13.  Thus,

---

[16] Although we have not yet addressed whether voluntary manslaughter under 18 U.S.C. § 1112 is a crime of violence, we have determined that state voluntary manslaughter crimes are not crimes of violence, because they can be committed recklessly. *See Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1306–07 (9th Cir. 2015) (holding California voluntary manslaughter is not a crime of violence, because a conviction requires "merely reckless conduct").

[17] The Majority's notion that the term "recklessness" effectively has one meaning conjures up visions of Alice in Wonderland: "When I use a word, . . . it means just what I choose it to mean—neither more nor less." Lewis Carroll, Through the Looking-Glass and What Alice Found There.

its decision in effect equates the term "malice aforethought" with "gross negligence" or "accidental conduct."  That cannot be correct.  Instead, there are significant differences between the mens rea necessary to support a conviction using ordinary recklessness and the recklessness necessary to establish malice aforethought.  That difference must be taken into account when defining a "crime of violence."

Post-*Leocal*, we have referenced terms such as "mere" or "simple" recklessness in the context of applying the categorical analysis and have held that the ordinary form of recklessness does not fall within the definition of a "crime of violence."  *See, e.g.*, *Covarrubias Teposte v. Holder*, 632 F.3d 1049, 1054 (9th Cir. 2011) (holding the California offense of shooting at an inhabited dwelling[18] or vehicle is not a crime of violence because it "requires a merely reckless *mens rea*"); *Pineda-Doval*, 614 F.3d at 1040 (noting that "second-degree murder required a finding of extreme recklessness evincing disregard for human life, not *simple recklessness*" (emphasis added)); *Fernandez-Ruiz*, 466 F.3d at 1124 ("We ordered rehearing en banc to resolve an inter- and intra-circuit conflict as to whether . . . crimes involving the *merely reckless* use of force can be crimes of violence." (emphasis added)).  These cases outline that the ordinary or "simple" form of recklessness is consistent with "gross negligence."[19]

---

[18] For purposes of the California Penal Code section 246, an "inhabited dwelling" need not be occupied.  *Covarrubias Teposte*, 632 F.3d at 1054.

[19] "'Gross negligence' is a relative term.  It is doubtless to be understood as meaning a greater want of care than is implied by the term 'ordinary negligence;' but, after all, it means the absence of the care that

However, we have never directly addressed "deliberate" or "extreme" recklessness in the same context,[20] which clearly provides a higher standard than "mere recklessness." *See Pineda-Doval*, 614 F.3d at 1039 (recognizing that "merely reckless driving cannot provide the basis for a second-degree murder conviction," because "'something more' was required to establish the malice aforethought necessary to prove second-degree murder" (quoting *United States v. Hernandez-Rodriguez*, 975 F.2d 622, 627 (9th Cir. 1992)).

This distinction between mere or simple recklessness and "extreme" recklessness is critical. The depraved-heart (i.e., reckless indifference) necessary for a conviction of second-degree murder requires more than "mere recklessness"; it requires *malice aforethought*. *See* 18 U.S.C. § 1111(a) ("Murder is the unlawful killing of a human being with malice aforethought."); *see also United States v. Lesina*, 833 F.2d 156, 159 (9th Cir. 1987) ("The difference between that recklessness which displays depravity and such extreme and wanton disregard for human life as to constitute 'malice' and that recklessness that amounts only to [gross negligence] lies in the quality of awareness of the risk." (citation omitted)). "Malice aforethought does not mean simply hatred or ill will, but also embraces the *state of mind* with which one *intentionally* commits a wrongful act without legal justification or excuse. It may be inferred from circumstances which show a wanton

---

was necessary under the circumstances." *Milwaukee & St. P.R. Co. v. Arms*, 91 U.S. 489, 495 (1875).

[20] In *United States v. Cabrera-Perez*, we seemed to recognize a difference in "the reckless mens rea" when we suggested that a crime of violence required a "mens rea of at least extreme recklessness." 751 F.3d at 1005.

and depraved spirit, a mind bent on evil mischief without regard to its consequences." *United States v. Celestine*, 510 F.2d 457, 459 (9th Cir. 1975) (emphasis added) (internal quotation marks and citation omitted); *see also Lesina*, 833 F.2d at 159 (noting that "disregard for human life becomes more callous, wanton or reckless, and more probative of malice aforethought, as it approaches a mental state comparable to deliberation and intent"). Notably, we have referred to extreme "reckless indifference" as "depraved-heart murder." *Pineda-Doval*, 614 F.3d at 1038. As even the Majority acknowledges, "[c]lassic examples of second-degree murder include shooting a gun into a room that the defendant knows to be occupied, playing a game of Russian roulette, and driving a car at very high speeds along a crowded main street." *Id.* at 1039. Yet, none of these examples demonstrate a recklessness equivalent to gross negligence. *See Fernandez-Ruiz*, 466 F.3d at 1130.

Although the specific facts of a case do not play into a categorical analysis, they do shed light on what conduct amounts to the recklessness of depraved heart murder. For example, we held that certain types of actions amounted to "extreme disregard for life" in *United States v. Houser*, 130 F.3d 867 (9th Cir. 1997), *United States v. Boise*, 916 F.2d 497 (9th Cir. 1990), and *Celestine*, 510 F.2d 457. In *Houser*, the defendant "took a handgun from his truck, pumped a cartridge into the chamber of the gun, [and] held the gun behind his back." 130 F.3d at 869. He then approached his girlfriend and, "[a]fter four or five seconds[,] . . . brought his right arm to the left side of [his girlfriend's] neck and shot her."[21] *Id.* We concluded that the district

---

[21] "Houser's defense was that the shooting was wholly accidental; that he did not intend to use the gun but that [his girlfriend] grabbed it

court's "extreme disregard" instruction was proper.[22]  *Id.*
at 871.  In *Boise*, we held that "the jury could rationally
conclude beyond a reasonable doubt that Boise displayed 'a
wanton and depraved spirit, a mind bent on evil mischief
without regard to its consequences,'" when he killed a small
child through "two blunt force blows to the head."  916 F.2d
at 500 (quoting *Celestine*, 510 F.2d at 459).  Similarly, in
*Celestine*, we held that a jury was permitted to conclude
"that the homicide was accompanied by a callous and
wanton disregard of human life," when the defendant killed
a woman by beating her with his fists and by repeatedly
kicking a stick into her vagina.  510 F.2d at 458–59.

These cases do not demonstrate the type of conduct
indicative of mere or simple recklessness that is equivalent
to gross negligence.  *See Leocal*, 543 U.S. at 9; *see also
Fernandez-Ruiz*, 466 F.3d at 1130 ("[T]he reckless use of
force is 'accidental' and crimes of recklessness cannot be
crimes of violence.").  Thus, the extreme recklessness
necessary to equate to malice aforethought is not and cannot
be "accidental."  *See Fernandez-Ruiz*, 466 F.3d at 1130; *see
also Leocal*, 543 U.S. at 9.  To the contrary, killing
"recklessly with extreme disregard for human life" most
naturally suggests a higher degree of depravity or knowing
disregard.  If the underlying use of physical force were
"accidental," the charge (or conviction) would be
involuntary manslaughter.  *See* Ninth Cir. Crim. Jury Inst.

---

and tried to wrest it from him, causing an accidental discharge."  *Houser*,
130 F.3d at 870.

[22] In *Houser*, we concluded that the district court's use of "the
expression 'extreme disregard for human life' instead of 'a wanton and
depraved spirit, a mind bent on evil mischief without regard to its
consequences,'" was not error because they were "functionally
equivalent."  130 F.3d at 871 n.3.

8.110 (requiring a jury to find that "the defendant acted with gross negligence, defined as wanton or reckless disregard for human life"). Thus, murder, which requires malice aforethought (with its higher degree of intent), must necessarily be a crime of violence.

As Judge Wardlaw aptly recognized in her dissent in *Fernandez-Ruiz*, "[r]ecklessness is a distinct mens rea, which lies closer to intentionality than to negligence." 466 F.3d at 1141–42 (Wardlaw, J., dissenting). The Supreme Court has also recognized that "the reckless disregard for human life . . . represents a highly culpable mental state." *Tison v. Arizona*, 481 U.S. 137, 157–58 (1987). The Majority's suggestion that second-degree murder can be committed without any intentional conduct is simply not correct. Although a defendant may not have to intended to kill ("express malice"), he or she nevertheless killed a human being with "an intentional act that had a high probability of resulting in death (implied malice)." *See Pollard v. White*, 119 F.3d 1430, 1434 (9th Cir. 1997) (noting at a minimum "implied malice aforethought" was demonstrated by the defendant's statement "that he was going to 'blow [the victim] away'" because it showed "an intent to shoot when he pulled the trigger" (alteration in original)). Again, these examples denote the difference between gross negligence (mere recklessness) and malice aforethought (depraved heart murder).[23]

---

[23] The difference between the required mens rea necessary for a conviction of manslaughter or for murder also demonstrates this important distinction. Under the federal definition, manslaughter is defined as an "unlawful killing of a human being *without malice*." 18 U.S.C. § 1112)(a) (emphasis added). Killing *without malice* suggests that the mental state required to commit manslaughter is lesser than the mental state required to commit some degree of murder. *See United*

II.

"[T]o construe statutes so as to avoid results glaringly absurd, has long been a judicial function." *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 333 (1938). Yet, the Majority does not seem to even contemplate the far-reaching results of its decision. This Majority opinion produces precisely those "glaringly absurd" results, which we are instructed to avoid. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) (noting "that interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available").

We have already concluded that as exhibiting a firearm in the presence of a passenger in a motor vehicle under California Penal Code section 417.3, *Bolanos*, 734 F.3d at 878, assault under Arizona Revised Statute sections 13-1203, 13-1204, *Cabrera-Perez*, 751 F.3d at 1007, and criminal threats under California Penal Code section 422, *Rosales-Rosales*, 347 F.3d at 717, are all crimes of violence. Although none of these crimes can be committed "recklessly," how can our court logically conclude that second-degree murder (the killing of a human being) is not a crime of violence when these lesser crimes are?

---

*States v. Paul*, 37 F.3d 496, 499 n.1 (9th Cir. 1994) (explaining voluntary manslaughter may involve "a defendant who killed unintentionally but recklessly with extreme disregard for human life . . . in the heat of passion with adequate provocation"); *see also Quintero*, 21 F.3d at 890 ("Intent without malice, not the heat of passion, is the defining characteristic of voluntary manslaughter."). Yet, the Majority's opinion ignores this difference in mens rea.

Even more problematic with this decision: under the Majority's approach, *attempted* murder would be a crime of violence while the complete offense would not be.[24] *See Braxton v. United States*, 500 U.S. 344, 351 n.**(1991) ("Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill."). We reached this same conclusion in *United States v. Studhorse*, 883 F.3d 1198. There, we first concluded that the crime could not be committed recklessly, because "the mental state required for criminal attempt (specific intent) is the highest mental state," "[r]egardless of the intent required to commit the underlying crime." *Id.* at 1203. Next, we concluded that Washington attempted first degree murder[25] fell under § 16(a)'s definition of "crime of violence." *See id.* at 1204 (Section 16(a) requires "an element the use, attempted use, or threatened use of physical force against the person." ). As with *Studhorse*, an attempt to commit murder under 18 U.S.C. § 1113 similarly would require a substantial step and an intent to commit the crime. *United States v. Goetzke*, 494 F.3d 1231, 1237 (9th Cir. 2007) (per curiam). It is illogical to conclude that an attempted murder is a

---

[24] This holding would also seem to conflict with convictions under 18 U.S.C. § 373, solicitation to commit a crime of violence, wherein a person solicits another to commit murder.

[25] Under Revised Code of Washington section 9A.32.030(1), first-degree murder includes "(b) Under circumstances manifesting an extreme indifference to human life, he or she engages in conduct which creates a grave risk of death to any person, and thereby causes the death of a person." Under the Majority's view, first-degree murder in Washington would not be a crime of violence, which the *Studhorse* panel rejected. 883 F.3d at 1204 ("[W]e easily conclude that Washington attempted first degree murder falls within § 16(a)'s definition of a 'crime of violence.'").

"crime of violence" that could garner a higher sentence than that for the actual killing of a human being.

The Majority's opinion also conflicts with other statutes and sentencing guidelines, which presume that murder is a crime of violence.[26]   *See, e.g.*, 18 U.S.C. § 3559(f)(1) (increasing the mandatory minimum for violent crimes against children "if the crime of violence is murder");

---

[26] The Majority's analysis could easily exclude first-degree murder as a crime of violence.  First- and second-degree murder both require that (1) the defendant unlawfully killed another and (2) the defendant killed with malice aforethought (which can be committed "recklessly with extreme disregard for human life").  *See* 8 U.S.C. § 1111(a); Ninth Cir. Crim. Jury Inst. 8.107, 8.108.  Although first degree murder can be:

> perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed[,]

18 U.S.C. § 1111(a), the "malice aforethought" element is still required.  *Id.*  Thus, if any degree of reckless conduct precludes a crime from being designated as a crime of violence, by the Majority's logic first-degree murder would not be a crime of violence either.  It further defies reason that a defendant could be subject to the death penalty; yet not be found to have committed a crime of violence.  *See* 18 U.S.C. § 3591(a)(2)(D) (The Federal Death Penalty Act recognizes that a murder could include the mens rea of "intentionally and specifically engag[ing] in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.").

U.S.S.G. § 4B1.2(a)(2) ("'[C]rime of violence' means . . . murder."); U.S.S.G. § 2L1.2 cmt. n.2 ("'Crime of violence' means . . . murder . . . ."). Again, the question: why carve out this exception for second-degree murder under § 16(a) and § 924(c)(3)(A), when Congress has been clear that murder is a crime of violence?

The Majority goes too far in extending the concept of recklessness to include malice aforethought. Malice aforethought, including "depraved heart" murder, requires conduct well beyond mere recklessness. Murder should be a categorical match to a crime of violence because of the necessary element of malice aforethought. Holding otherwise makes the definition of "crime of violence" virtually meaningless and will lead to utterly absurd results in future cases.