**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUN 30 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-50355 |
| Plaintiff-Appellee, | D.C. No. 10-cr-00923-SJO-31<br>Central District of California,<br>Los Angeles |
| v. | ORDER |
| RONDALE YOUNG, | |
| Defendant-Appellant. | |

Before: WATFORD, BUMATAY, Circuit Judges, and FREUDENTHAL,** Senior District Judge

   The Memorandum filed July 28, 2021 is withdrawn and replaced by the new Memorandum filed concurrently with this order.  The order staying the mandate pending the conclusion of en banc proceedings in *United States v. Begay*, No. 14-10080 is vacated.  Petitions for rehearing or for rehearing en banc may be filed with respect to the new memorandum.

---

   **      The Honorable Nancy D. Freudenthal, United States Senior District Judge for the District of Wyoming, sitting by designation.

1

NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUN 30 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-50355 |
| Plaintiff-Appellee, | D.C. No. 10-cr-00923-SJO |
| v. | MEMORANDUM[*] |
| RONDALE YOUNG, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted July 9, 2021
Pasadena, California

Before: WATFORD, BUMATAY, Circuit Judges, and FREUDENTHAL,[**] Senior
District Judge
Concurrence by Judge WATFORD

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Nancy D. Freudenthal, United States Senior District
Judge for the District of Wyoming, sitting by designation.

1

Following an earlier reversal and remand in *United States v. Young*, 720 F. App'x 846 (9th Cir. 2017), Rondale Young was tried a second time on charges arising from a 2009 shooting at a carwash in nearby 38th Street gang territory. The jury returned convictions for conspiracy to violate the Racketeer Influenced and Corrupt Practices Act (RICO), conspiratorial and substantive murder under the Violent Crime in Aid of Racketeering (VICAR) statute, and use of a firearm in furtherance of a crime of violence. The Court affirms in all respects.

1.     Young argues his prior state acquittal for murder bars or is a defense against federal prosecution for VICAR murder. He also argues re-prosecution is barred because the government delayed prosecution. The district court did not err in denying dismissal. The federal trial was not for a violation of the same statute adjudicated in state court even though the indictment for VICAR murder borrowed California law defining murder. Thus, the exception to the separate sovereign doctrine recognized in *Houston v. Moore*, 18 U.S. 1 (1820) and confirmed in *Gamble v. United States*, 139 S. Ct. 1960, 1977–78 (2019), does not apply.

Young's second theory that his state acquittal is a valid defense was not preserved below, thus this issue is reviewed for plain error. *United States v. McElmurry*, 776 F.3d 1061, 1063 (9th Cir. 2015). The district court did not plainly err in allowing the VICAR murder charge to go to the jury. On this charge, to avoid prejudice, the court "should instruct on the state definition" to include "the requisite

state of mind or the law respecting self-defense." *United States v. Adkins*, 883 F.3d 1207, 1211 (9th Cir. 2018) (citation omitted). A prior acquittal is not part of California's *definition* of murder; thus his state acquittal is not a valid defense to VICAR murder.

As to delay in prosecution, Young's Sixth Amendment speedy trial claim is waived by his failure to raise it in the earlier appeal. *United States v. Radmall*, 340 F.3d 798, 802 (9th Cir. 2003) ("[Defendant] cannot now use the serendipitous fact of reversal . . . to refashion his defaulted claims. . . ."). Dismissal for delay under Federal Rule of Criminal Procedure 48(b) "is limited to post-arrest situations." *United States v. Benitez*, 34 F.3d 1489, 1495 (9th Cir. 1994) ("[A]n arrest or prosecution by state authorities does not trigger Rule 48(b)"). The ten-month period between Young's federal arrest and trial does not constitute unnecessary delay.

2.     Young argues the law of the case requires suppression of his second-day custodial statements and recorded calls based on the mid-stream *Miranda* warning given his first day in custody during a deliberate two-step interrogation ruled improper in his earlier appeal. *Young*, 720 F. App'x at 848–49. Young also argues for suppression of his recorded calls, and for suppression of allegedly coerced statements made after officers detained and referred to his mother. The law of the case does not require suppression of Young's second-day statements because this Court's earlier decision addressed only the circumstances of the first day with no

3

implication that the Court reached Young's later statements. *See United States v. Garcia-Beltran*, 443 F.3d 1126, 1129 (9th Cir. 2006) (the law of the case extends to issues "decided explicitly or by necessary implication").

Further, there is no clear error in the district court's factual findings denying Young's suppression motion. *United States v. Job*, 871 F.3d 852, 859 (9th Cir. 2017) ("[F]actual findings [are reviewed] for clear error . . . ."). These findings support the district court's conclusion that the circumstances of that second day were curative of the prior day's *Miranda* violation. *See Bobby v. Dixon*, 565 U.S. 23, 32 (2011) (the break in time and change in circumstances created "a new and distinct experience" to conclude the *Miranda* warning was not undermined (citation omitted)). No additional curative steps were required for a reasonable person in Young's position to understand that he had a real choice about whether to speak again at his request to the detectives. *See Missouri v. Seibert*, 542 U.S. 600, 611–12 (2004).

The district court's findings that Young's testimony was not credible support the order denying suppression of the recorded calls. Special deference is given to a district court's determinations of witness credibility. *United States v. Hovsepian*, 422 F.3d 883, 885 (9th Cir. 2005). Finally, the detective's actions and comments about Young's mother were not coercive but were logically related to video

surveillance and eyewitness identifications indicating the vehicle used in the carwash shooting belonged to Young's mother.

3.      Young argues the jury instructions erroneously described VICAR's purpose (motive) and its malice elements. As to purpose, Young argues *Burrage v. United States*, 571 U.S. 204 (2014) requires a "but-for" causal relationship between the racketeering enterprise and the murder. This argument was rejected in *United States v. Rodriguez*, 971 F.3d 1005, 1010–11 (9th Cir. 2020) and thus we reject it here. The district court correctly gave a "substantial purpose" rather than a "but-for cause" instruction for the VICAR purpose element. Young also argues the disjunctive form of the purpose instruction was erroneous. However, a disjunctive formulation was specifically recognized in *United States v. Banks*, 514 F.3d 959 (9th Cir. 2008) to "ensure that the statute is given its full scope, without allowing it to be used to turn every criminal act by a gang member into a federal crime." *Id*. at 970.

The Court also rejects Young's arguments that the malice instructions were defective for conspiratorial and substantive murder under VICAR. The instruction for conspiratorial murder required the government to prove Young agreed and intended that one or more of his co-conspirators would "intentionally and unlawfully kill" the victim, not just "intentionally kill." The substantive VICAR murder instruction provided that a person acts with *express malice* if he unlawfully intended to kill. Read together, the phrase "intentionally and unlawfully kill" incorporates an

5

express malice requirement. The jury could not convict on only implied malice. On aiding and abetting VICAR murder, the instruction required the jury find Young "intentionally help[ed] someone else commit a crime" by "act[ing] with the intent to facilitate murder in the aid of racketeering" by "actively participat[ing] in a criminal venture *with advance knowledge* of the crime and having acquired that knowledge *when Defendant still had a realistic opportunity to withdraw from the crime*." (emphasis added). This instruction does not permit a conviction by finding the shooting was merely a natural and probable consequence of Young picking up the co-conspirators.

Young was also not entitled to a sua sponte heat of passion instruction, as the evidence did not support it. *People v. Breverman,* 960 P.2d 1094, 1104 (Cal. 1998). Approximately forty minutes passed between the shooting of Young's fellow gang member (McWayne) and the car wash shooting. Surveillance video shows the car that Young was driving circled the car wash for three to four minutes before the shooting, showing some deliberation. There was also no evidence that Young or his passengers thought the victim was McWayne's shooter; rather, they looked for someone likely to be a member of the rival gang. These facts at best support acting on an emotion of revenge, which cannot support a heat of passion instruction. *People v. Lasko,* 999 P.2d 666, 670 (Cal. 2000). In addition, as in *United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022) (en banc), the theory that Young's counsel

6

presented to the jury – that Young did not know anyone in the car was going to commit murder – is incompatible with the notion that Young acted in the heat of passion. *See id*. at 1088–89.

Finally, the instruction for *Pinkerton* liability is correct in that the jury was required to find Young agreed with the shooter that one or both of them would kill with express malice, and the shooting of the victim was a natural and probable consequence of that agreement.

4.    Young's conviction for use and carry of a firearm in furtherance of a crime of violence relies on the VICAR second degree murder charge as the crime of violence. Previously, *United States v. Begay*, 934 F.3d 1033 (9th Cir. 2019) held that a finding of extreme recklessness, depraved heart, or implied malice will suffice as the requisite mental state for second degree murder under federal and California law. *Id*. at 1040; Cal. Penal Code § 188. The plurality in *Borden v. United States*, 593 U.S. __, 141 S. Ct. 1817 (2021) subsequently concluded the phrase "violent felony" under 18 U.S.C. § 924(e) of the Armed Career Criminal Act (ACCA) does not include offenses criminalizing "ordinary" reckless conduct. *Id*. at 1825, n.4. The definitions of "crime of violence" in § 924(c)(3) and "violent felony" in § 924(e)(2)(B) are identical in relevant part.

On rehearing en banc, this Court found that after *Borden,* "[t]he distinction between degrees of recklessness is critical to our conclusion." *United States v.*

*Begay,* 33 F. 4th 1081, 1094 (9th Cir. 2022) (en banc). The opinion notes that second degree murder under federal law (18 U.S.C. § 1111(a)) requires conduct in extreme indifference to the value of human life, such that the defendant can fairly be said to have actively used force against the person of another. *Id.* at *11. Therefore, "second-degree [federal] murder qualifies as a crime of violence pursuant to § 924(c)(3)(A)." *Id.* at *3. Here, Count Three was charged as murder in violation of both VICAR (18 U.S.C. § 1959(a)) and California law. California second-degree murder requires express or implied "malice aforethought." Cal. Penal Code § 188.

Young points to the jury instruction defining malice aforethought – based on California's former definition of the term – and argues the jury was not required to find extreme indifference or extreme recklessness in this case, and therefore there was no crime of violence to support the § 924(c) conviction. But the focus here is categorical. And as noted, there was no error on the other counts. At trial, the government pursued Count Three based only on theories of Young being a conspirator or aider and abettor – Young was the driver, not the shooter – and the instructions on conspirator liability and aiding and abetting for Count Three required the jury to find respectively express malice (by referring to Count Two) or advance knowledge that a murder would be committed.

5.      Young further argues error in the district court instructing the jury on a *Pinkerton* theory of liability for his § 924(c) conviction. This Court rejected

8

Young's argument in *United States v. Henry,* 984 F.3d 1343, 1355–56 (9th Cir. 2021). Young contends that *Henry*'s continued reliance on reasonable foreseeability is inconsistent with *Borden* and *Rosemond v. United States,* 572 U.S. 65 (2014). But neither of those cases addresses *Pinkerton* liability, and they are not clearly irreconcilable with *Henry.* Post-*Borden,* this Court continues to follow *Henry. See, e.g., United States v. McShane,* No. 17-16906, 2021 WL 4810501, at *1 (9th Cir. Oct. 15, 2021); *United States v. Major,* No. 17-16764, 2022 WL 1714290, at *1 (9th Cir. May 27, 2022).

6. The Court rejects Young's argument that the law permits a fine without imprisonment for VICAR murder. *See United States v. Rollness*, 561 F.3d 996, 998 (9th Cir. 2009) (per curiam) (recognizing that "§ 1959(a)(1) imposes a minimum sentence of life imprisonment for VICAR murder"). The holding in *Rollness* is unaffected by *Encino Motors, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018).

**AFFIRMED.**

FILED

JUN 30 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WATFORD, Circuit Judge, concurring:

I agree with my colleagues that a conviction for VICAR murder carries a mandatory minimum sentence of life imprisonment without the possibility of parole. *United States v. Rollness*, 561 F.3d 996, 997–98 (9th Cir. 2009) (per curiam); *accord United States v. Under Seal*, 819 F.3d 715, 720 (4th Cir. 2016); *United States v. Carson*, 455 F.3d 336, 385 n.44 (D.C. Cir. 2006) (per curiam); *United States v. James*, 239 F.3d 120, 126–27 (2d Cir. 2000). But this case illustrates why mandatory minimum sentences of any sort—especially a sentence of life without parole—are both unjust and unwise.

The district judge who sentenced Rondale Young to life without parole did not believe that sentence to be warranted. He agreed with the jury's verdict, which was predicated on a finding that Young played an integral role in the murder of an innocent person. To retaliate against a rival gang, Young drove two of his fellow gang members into the rival gang's territory to kill one of that gang's members. Young's co-conspirators got out of the car, shot and killed someone they mistakenly believed to be a member of the rival gang, and then ran back to the car where Young was waiting to drive them off. Young no doubt deserved a lengthy sentence for engaging in that conduct, and the judge who presided over his trial and heard the evidence against him was no doubt prepared to impose such a

sentence. But the judge also stated that, if afforded the discretion to do so, he would not have sentenced Young to spend the rest of his life in prison.

Young's character and background did not suggest that he deserved the law's most severe sanction short of death. He was 26 years old at the time of the offense, a devoted father, and employed as a delivery driver for Arrowhead. He had only a minor criminal record. In addition, there was no evidence suggesting that Young had planned or orchestrated the murder, so his role in the offense rendered him at least somewhat less culpable than the other two participants. Yet the judge had already sentenced one of those defendants—the one who prosecutors believed had actually shot the victim—to 40 years in prison. (That defendant, Anthony Gabourel, had been tried separately from Young and acquitted of the VICAR murder charge, so he avoided the mandatory life sentence that Young faced.) The judge was understandably reluctant to impose on Young a longer sentence than the one his more culpable co-defendant had received.

What the Supreme Court has said in the capital sentencing context applies, in my view, with no less force in non-capital cases. Arriving at a "just and appropriate sentence" in any case—capital or otherwise—"requires consideration of the character and record of the individual offender and the circumstances of the particular offense." *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) (plurality opinion); *see also* 18 U.S.C. § 3553(a)(1) (requiring the court to

consider, among other factors, the "nature and circumstances of the offense and the history and characteristics of the defendant"). Mandatory minimum sentencing laws frequently preclude the imposition of a just and appropriate sentence because they "treat[] all persons convicted of a designated offense not as uniquely individual human beings, but as members of a faceless, undifferentiated mass." *Woodson*, 428 U.S. at 304. Young deserved to be treated "with that degree of respect due the uniqueness of the individual," *Lockett v. Ohio*, 438 U.S. 586, 605 (1978) (plurality opinion), even if he was facing a sentence of life without parole rather than death.